UNITED STATES OF AMERICA,

        Appellee,

     -v-

ROBERT RIVERNIDER,

       Defendant-Appellant.

No. 26-926

## MEMORANDUM IN OPPOSITION TO MOTION FOR BAIL PENDING APPEAL AND EXPEDITED REVIEW

Appellee United States of America submits this memorandum in opposition to a motion filed by defendant-appellant Robert Rivernider, proceeding *pro se*, for emergency release pending appeal, expedited review and briefing, and expedited transmission of the record. Rivernider does not and cannot satisfy the standard to justify release pending appeal, expedited review, or his other requested relief.

In 2024, Rivernider's supervised release case was transferred from the District of Connecticut to the Middle District of Florida under 18 U.S.C. § 3605, thereby divesting the District of Connecticut of jurisdiction, as the district court (Chatigny, J.) properly found in his March 21, 2026 docket orders. In the Middle District of Florida, Rivernider's supervised release term was later revoked upon a finding of violations, and he was sentenced to a three-year prison term. Rivernider

1

is now challenging that revocation judgment before the Court of Appeals for the Eleventh Circuit.

Rivernider's instant appeal here is an attempt to forum shop his arguments to multiple circuit courts simultaneously. But this Court has no jurisdiction to countermand the revocation judgment of the Middle District of Florida or the transfer order, both of which are currently under review by the Eleventh Circuit.

Given the deficits in his appeal—both jurisdictional and on the merits—Rivernider cannot carry his burden to show he is entitled to release pending appeal, expedited review, or any of his requested relief. The Court should deny his motion.

## I.  Procedural Background

### A. The Connecticut criminal case

At all relevant times, while at liberty, defendant Robert Rivernider lived in Florida. On November 4, 2010, Rivernider was indicted for 20 counts of wire fraud, tax evasion, and conspiracy charges related to a Ponzi scheme and fraudulent real estate scheme that he orchestrated. *United States v. Rivernider*, Case No. 3:10CR222 (RNC), (D. Conn.), Doc. 1 (hereinafter "Connecticut Criminal Case"). In February 2013, Rivernider pleaded guilty, and, in December 2013, he was sentenced principally to 144 months in

prison and five years of supervised release. Connecticut Criminal Case, Docs. 367, 577, 583. His convictions and sentence were later affirmed on appeal. *See United States v. Rivernider*, 828 F.3d 91, 98 (2d Cir. 2016).

After serving only a little more than half of his sentence, Rivernider was given compassionate release during the Covid pandemic in May 2020. Connecticut Criminal Case, Docs. 785, 787. At an August 2023 revocation hearing before the District of Connecticut, Rivernider admitted that he had failed to pay restitution and engaged in unauthorized financial transactions, in violation of his conditions of supervised release, but he received no additional prison term at that time.[1] Connecticut Criminal Case, Docs. 832, 836.

## B.    Transfer to the Middle District of Florida

On March 28, 2024, the Connecticut district court signed a Transfer of Jurisdiction form, transferring the case under 18 U.S.C. § 3605 to the Middle District of Florida, where Rivernider resided. *See United States v.*

---

[1]    During the pendency of his case, Rivernider unsuccessfully pursued various forms of collateral relief, attacking his convictions and sentence. In July 2014, he filed a habeas petition under 18 U.S.C. § 2255 motion, which was ultimately dismissed, with no certificate of appealability, in September 2022, after years of litigation, motion practice, and evidentiary hearings. *Rivernider v. United States*, Case No. 3:14CV1000, Docs. 1, 259 (hereinafter "Connecticut Habeas Case"). This Court later dismissed Rivernider's habeas appeal. Connecticut Criminal Case, Doc. 269. Rivernider also filed multiple frivolous and vexatious motions. *See, e.g.*, Connecticut Habeas Case, Doc. 267; Connecticut Criminal Case, Doc. 830 (motions to identify himself as "Hunter Biden").

*Rivernider*, 5:24CR138-TPB-PRL-1 (M.D. Fla.), Doc. 1 (hereinafter the "Florida Criminal Case"). The transfer order explained that Rivernider lived in Florida, while "[h]e has no ties to Connecticut and no plans of returning to Connecticut." (In fact, Rivernider never lived in Connecticut.) The order continued:

> It is hereby ordered that pursuant to 18 U.S.C. Section 3605, the jurisdiction of the probationer or supervised release named above be transferred with records to the Court of the United States District Court for the Middle District of Florida upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this court.

*Id.* On December 4, 2024, the Connecticut district court re-executed an identical version of this transfer order. Connecticut Criminal Case, Doc. 864. On December 9, 2024, the district court in the Middle District of Florida (Barber, J.) signed Part 2 of the document accepting jurisdiction, thereby "order[ing] that jurisdiction over the above-named probationer/supervised releasee be accepted by this Court [*i.e.*, the Middle District of Florida] from and after then entry of this order." Connecticut Criminal Case, Doc. 864. That order transferring jurisdiction to the Florida district court was entered on the Connecticut criminal docket on December 11, 2024, approximately a year and a half ago. *Id.*

4

## C. Continued proceedings in the Middle District of Florida

Rivernider's supervised release matter continued apace in the Middle District of Florida. The Florida Criminal Case docket contains 147 entries, dating from the court's assumption of jurisdiction in December 2024 through the present, which reflect various writs, petitions, motions, emergency motions, detention hearings, and violation hearings. *See* Florida Criminal Case, 5:24CR138-TPB-PRL-1 Docket Sheet. According to that docket, on June 25, 2025, Rivernider was arrested in Florida for violations of supervised release; he has been detained since then. Florida Criminal Case, Docs. 17, 20. Specifically, Rivernider had conducted unauthorized financial transactions, had refused to make restitution payments or report to the U.S. Probation Office, and—most serious—had sustained new felony convictions in Florida state court for forgery, uttering a forged public record, and voter fraud. Florida Criminal Case, Doc. 78, at 4-7.

In August 2025, Rivernider first sought to attack his detention and supervised release revocation proceedings in Florida by moving to vacate his Florida arrest warrant and seeking to withdraw his guilty plea in the original Connecticut criminal matter, which he had entered over a decade earlier. Florida Criminal Case, Doc. 64. The Florida district court denied these motions, without requiring a government response. Florida Criminal

Case, Doc. 82. In September 2025, Rivernider filed a flurry of additional motions, simultaneously seeking to admit his violations, *see id.*, Doc. 83, seeking to dismiss the violation petition, *see id.*, Doc. 85, pressing Sixth Amendment challenges, *see id.*, Doc. 84, and baselessly accusing his U.S. Probation Officer in Florida of committing fraud on the court, *see id.*, Doc. 86. The Florida district court denied all of these motions as without basis, *see id.*, Docs. 87-93, and specifically instructed that "[a]ny future 'appeals' filed by Defendant of the detention order may be summarily denied," *id.*, Doc. 91. In response to Rivernider's vexatious filings, the Florida district court issued the following order on September 10, 2025:

> In light of the prolific and voluminous filing of motions, appeals and other documents by Defendant Robert Rivernider, the Government's obligation to respond to pending motions and appeals is suspended. Should a response be appropriate, the Court will direct the Government to file a response. The Court reminds the Defendant that the pendency of motions or other matters may provide reason to reschedule the final revocation hearing if the Court needs additional time to resolve any pending motions or matters. He therefore may want to carefully consider whether filing a motion, appeal, or documents is necessary or helpful to his case.

Florida Criminal Case, Doc. 93.

On December 12, 2025, the Florida district court held a final revocation hearing, revoked Rivernider's supervised release, and imposed sentence of three years' imprisonment with no supervision to follow. Florida

Criminal Case, Docs. 114, 115.

### D. The ongoing Eleventh Circuit appeal

In December 2025, Rivernider appealed to the Eleventh Circuit the supervised release judgment entered by the district court in the Middle District of Florida. *See* Florida Criminal Case, Doc. 119; *Rivernider v. United States*, Case No. 25-14369 (11th Cir.), Dkt. 1 (hereinafter "Eleventh Circuit Appeal").

On May 18, 2026, Rivernider filed in the Eleventh Circuit a "Renewed Emergency Motion for Immediate Release," in which he challenged the transfer of jurisdiction of his case from Connecticut to Florida and sought release on substantially similar grounds as he does in the instant motion. *See* Eleventh Circuit Appeal, Dkt. 35. Days ago, on June 4, 2026, the U.S. Attorney's Office for the Middle District in Florida opposed Rivernider's motion, explaining that Rivernider's request for release lacked any basis under law, and reserving the right to respond further in due course to Rivernider's challenges to the Florida's district court's judgment. *Id.*, Dkt. 37. Rivernider's motion before the Eleventh Circuit remains pending, and that appeal is ongoing.

### E. Renewed pleadings in Connecticut

Apparently unhappy with the outcome in Florida and unwilling to

await a decision from the Eleventh Circuit, Rivernider, proceeding *pro se*, filed motions in Connecticut district court in early 2026, which reiterated similar grievances with the Florida Probation Office, among others. As relevant here, on January 13, 2026, Rivernider moved for the first time in Connecticut to vacate the transfer of jurisdiction of this case from the District of Connecticut to the Middle District of Florida—over a year after the transfer was accomplished in December 2024. Connecticut Criminal Case, Doc. 869. In his untimely motion to vacate transfer, the defendant claimed that the transfer was obtained by fraud on the court. *Id.* at 3. The defendant also moved the Connecticut district court for immediate release, on the theory that the transfer of jurisdiction was invalid and thus any revocation proceedings and sentencing in the Middle District of Florida were also invalid. Connecticut Criminal Case, Doc. 868, at 2.

On February 13, 2026, government counsel in Connecticut filed a response to Rivernider's motions to vacate transfer of jurisdiction and for immediate release, noting that the Connecticut district court lacked jurisdiction to consider a challenge first lodged long after the Florida district court had formally accepted transfer of the case. The government further argued that any allegations of fraud by the Florida Probation Office were baseless. Connecticut Criminal Case, Doc. 875 at 6-10.

On March 21, 2026, the district court for the District of Connecticut denied Rivernider's motions:

> The motion is denied for substantially the same reasons set forth in the Government's response. Jurisdiction over the defendant's supervised release was transferred in December 2024 to the Middle District of Florida, where it was accepted, all as provided by 18 U.S.C. § 3605. The defendant did not object to, request a stay of, or appeal the order transferring his case. Since then, the Middle District of Florida has been vested with exclusive jurisdiction over all matters relating to his supervised release. *See United States v. King*, 608 F.3d 1122, 1126 (9th Cir. 2010) (the transferee court steps into the shoes of the transferor court); *United States v. Sastrom*, No. 3:08-00240 (D. Conn. Nov. 2, 2023) (Once [such a] transfer is effected, the transferor court no longer has jurisdiction to exercise the powers that may be exercised by the transferee court.). As a result, this court does not have jurisdiction to adjudicate the defendant's allegation that the transfer was procured by fraud. So ordered.

Connecticut Criminal Case, Doc. 882. The district court also denied Rivernider's motions for clarification, for expedited review, and for release from custody, explaining that the court "lack[ed] jurisdiction." *Id.*, Docs. 883-886. On April 8, 2026, Rivernider filed the instant appeal to this Court. *Id.*, Doc. 891.

## II.   Discussion

In the instant motion, Rivernider seeks release pending appeal, expedited briefing and review, and expedited transmission of various filings from the District of Connecticut and Middle District of Florida dockets. *See*

Def. Mot., Dkt. 25. He is entitled to none of this relief from this Court.

To begin, Rivernider has not come close to carrying his burden to show that he should be granted bail pending appeal. The Bail Reform Act of 1984 governs requests for release pending appeal. *See* Fed. R. App. P. 9(c) ("The court must make its decision regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, and 3145(c)."). Under 18 U.S.C. § 3143(b), when a convicted defendant sentenced to a term of imprisonment files an appeal, he must be detained unless a judicial officer finds "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," *and* "(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(A)-(B); *see United States v. Randell*, 761 F.2d 122, 124-25 (2d Cir. 1985).

The defendant bears the burden of establishing each requirement for release pending appeal. *Randell*, 761 F.2d at 125 (establishing burden on the moving party and defining a "substantial question" as "a close question

10

or one that very well could be decided the other way" (cleaned up)); *see also United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (recognizing statutory "presumption in favor of detention" following conviction).

First, Rivernider makes no argument with respect to flight or dangerousness. That alone is a sufficient basis for this Court to deny his motion. And because he did not even attempt to make such a showing regarding risk of flight or danger to the community in the district court, *see* Connecticut Criminal Case, Docs. 868, 869, there is no record upon which this Court can decide those prerequisite matters, much less by the required "clear and convincing evidence" standard, 18 U.S.C. § 3143(b).

But even if he could establish those prerequisites, Rivernider fails to raise any arguments that present a substantial question of law or fact likely to result in the reversal of Judge Chatigny's dismissal for want of jurisdiction. The transfer under 18 U.S.C. § 3605 plainly invested the Middle District of Florida with jurisdiction over Rivernider's pending supervised release case and commensurately divested the District of Connecticut of jurisdiction, as Judge Chatigny properly found. The statute in relevant part provides:

> A court, after imposing a sentence, may transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed

11

as a condition of his probation or release, or is permitted to proceed, with the concurrence of such court. A later transfer may be made in the same manner. *A court to which jurisdiction is transferred* under this section *is authorized to exercise all powers* over the probationer or releasee that are permitted by this subchapter or subchapter B or D [enabling revocation of supervised release] of chapter 227.

18 U.S.C. Section 3605 (emphasis added). According to a leading legal treatise, this type of transfer was firmly within the discretion of the district court—particularly where, as here, the defendant and his supervising probation officer were located in a district a thousand miles away:

> The court with jurisdiction over a defendant's probation or supervised release can transfer jurisdiction to another district with the concurrence of the transferee court. This is often done to transfer supervision to the district of the defendant's residence, or because the defendant was charged or convicted of another offense in another district and the courts act on their own to consolidate supervision of the defendant in one district. The transfer of jurisdiction is not considered a modification of the terms or conditions of probation or supervised release as that phrase is used in Rule 32.1, *so a defendant is not entitled to notice of the transfer or the opportunity to contest it.*

26 Moore's Federal Practice – Criminal Procedure Section 632.1.07 (2-26) (emphasis added) (citing *United States v. Evans*, 87 F.3d 1009, 1011 (8th Cir. 1996); *United States v. Ohler*, 22 F.3d 857, 858-59 (9th Cir. 1994)). The defendant does not have a liberty interest in the location of his probation jurisdiction, and the courts maintain collective discretion to transfer a

12

defendant for purposes of supervised release if the statutory conditions are met. *Ohler*, 22 F.3d 857, 858-59.

Once a transfer is effectuated—particularly in the absence of any timely defense objection or request to stay—the transferor court no longer has jurisdiction to exercise powers that may be exercised by the transferee court. *See, e.g.*, *United States v. El Herman*, 971 F.3d 784, 786 (8th Cir. 2020) (affirming dismissal for lack of jurisdiction because "[o]nce the transfer is effected, the transferor court no longer has jurisdiction to exercise the powers that may be exercised by the transferee court."); *United States v. Fernandez*, 379 F.3d 270, 275 (5th Cir. 2004) ("Congress clearly intended to expand, not limit, the ability of the transferor court to transfer jurisdiction and of the transferee court to *take full jurisdiction from the transferor court*." (emphasis added)); *United States v. Clark*, 405 F. App'x. 89, 92-93 (8th Cir. 2010) (dismissing appeal for lack of jurisdiction, as the district court "no longer possessed jurisdiction over [the defendant] because a transfer of jurisdiction means that the 'transferee court. . . takes full jurisdiction from the transferor court." (cleaned up)); *United States v. Caldwell*, 2025 WL 1638527, at *1 (D. Utah, June 9, 2025) (citing cases); *United States v. Wallace*, 2025 WL 1040979, at *1 (D. Kansas. April 8, 2025 (citing cases); *United States v. Rosa-Marte*, 757 F.Supp.3d 158, 159 (D.

Mass. November 21, 2024). Even for "pre-transfer violations" of supervised release, "the transferee court steps into the shoes of the transferor court," thereby divesting the transferor court of jurisdiction. *United States v. King*, 608 F.3d 1122, 1126-27 (9th Cir. 2010); *see also United States v. Adams*, 723 F.3d 687, 689 (6th Cir. 2013) (collecting cases); *United States v. Bailey*, 257 F. App'x 210, 212 (11th Cir. 2007).

The district court's dismissal here for lack of jurisdiction was squarely in compliance with this undisputed authority. Indeed, Rivernider does not even attempt to contest this case law. Nor does he grapple with the obvious practical problems that his position would create if, for instance, the Second and Eleventh Circuits simultaneously asserted jurisdiction and issued contradictory rulings. Nor even does he explain how the Second Circuit can grant his requested relief via an order to a district court (the Middle District of Florida) over which this Court does not maintain supervisory jurisdiction. In short, Rivernider does not come close to raising the sort of "substantial question" that could justify release pending appeal. *Randell*, 761 F.2d at 125.

Rivernider's request for expedited review is similarly meritless, for much the same reasons. He does not explain why expedited review is justified under this Court's Local Rule 31.2, and his argument is riddled

with the same infirmities discussed above. In particular, his request for expedited review is frivolous in light of the fact that the Eleventh Circuit— a forum with lawful jurisdiction—is presently reviewing essentially the same arguments that Rivernider presses here. And—unlike this Court—the Eleventh Circuit would be empowered to grant his requested relief, if warranted.

Finally, regarding the request for expedited transmission of transcripts from the District of Connecticut docket, Rivernider apparently misunderstands both what records are available and the proper recourse for any remaining records. He seeks expedited transmission of "readable copies of District of Connecticut docket entries 882, 883, 884, 885, and 886, all filed and entered March 21, 2026, because Appellant cannot presently access readable copies of those orders." Def. Mot., Dkt. 25, at 2. But as the docket makes plain, those entries are merely docket orders, with no separate linked opinions, and Rivernider already has access to them. The same is true for docket entry 865, which Rivernider requests.

Rivernider also seeks various docket entries from the Middle District of Florida. As an initial matter, this Court is not empowered to order production from a district court outside its jurisdiction. More to the point, this request is unnecessary, because Rivernider has directed identical

requests to the Middle District of Florida and the Eleventh Circuit, and the Florida district court is now actively complying with those transcript requests. *See* Eleventh Circuit Appeal, Dkt. 37, at 4. As government counsel in Florida pointed out, if it becomes necessary to seek to enforce those orders for production of transcripts, Rivernider's recourse would lie in the district court—not in the Eleventh Circuit, and assuredly not in the Second Circuit. *Id.* The same is true of Rivernider's ill-formed request for any "non-public document," "judicial finding," or the like, regarding his term of supervised release. Def. Mot., Dkt. 25, at 3. Insofar as Rivernider is seeking to develop a factual record beyond that which already exists, that request belongs, if at all, in the Florida district court.

Ultimately, Rivernider's instant motion and appeal constitute a transparent, but unlawful, attempt to take a second bite at the apple in a different forum—one that should not be countenanced by this Court.

## III. Conclusion

For the foregoing reasons, this Court should deny Rivernider's motion.

Dated: June 11, 2026

       Respectfully submitted,

       DAVID X. SULLIVAN
       UNITED STATES ATTORNEY

        /s/

       CHRISTOPHER SCHMEISSER
       ASSISTANT U.S. ATTORNEY
       157 Church Street, 25th Floor
       New Haven, CT 06510
       (203) 821-3700

STATE OF CONNECTICUT         Ss: New Haven, Connecticut
COUNTY OF NEW HAVEN

## AFFIDAVIT

I, Christopher Schmeisser, state as follows:

1. I am an Assistant United States Attorney for the District of Connecticut. I represent the United States in the captioned appeal, and I am admitted to practice before this Court.

2. I make this affidavit in support of the Government's memorandum in opposition to the defendant's motion for emergency release pending appeal, expedited review and briefing, and expedited transmission of record materials.

3. The facts in the Government's memorandum attached to this motion are true and correct to the best of my knowledge and belief.

4. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 11, 2026.

AFFIANT

*/s/ Christopher W. Schmeisser*

CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY

18

**Federal Rule of Appellate Procedure 26.1 Disclosure Statement**

In this criminal case, there are no organizational victims.

*/s/ Christopher W. Schmeisser*

CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY

## Federal Rule of Appellate Procedure 32(g) Certification

This is to certify that the foregoing motion complies with the 5,200-word limitation of Federal Rule of Appellate Procedure 27(d)(2)(A), in that the motion is calculated by the word processing program to contain approximately 3,591 words, excluding the affidavit, the Rule 26.1 Disclosure Statement, and this certification.

*/s/ Christopher W. Schmeisser*

_____

CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY

## CERTIFICATE OF SERVICE

This is to certify that on June 11, 2026, a copy of the foregoing motion and memorandum of law was filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Notice was sent by United States mail to the following:

Robert Rivernider
Reg. No. 96006-004
FCI Beckley – Satellite Camp
P.O. Box 350
Beaver, WV 25813

*/s/ Christopher W. Schmeisser*

_____

CHRISTOPHER W. SCHMEISSER